**Mark KAISER, Plaintiff,**

v.

**DEPUY SPINE, INC., a foreign corporation, Defendant.**

**Case No. 8:12–cv–2596–T35–AEP.**

United States District Court,
M.D. Florida,
Tampa Division.

May 14, 2013.

Raymond A. Haas, William L. Clark, Haas, Lewis, Difiore & Amos, PL, Tampa, FL, for Plaintiff.

David J. Walz, Edward W. Gerecke, Carlton Fields, PA, Tampa, FL, for Defendant.

## ORDER

MARY S. SCRIVEN, District Judge.

**THIS CAUSE** comes before the Court for consideration of Defendant DePuy Spine, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 22), Plaintiff's Response in Opposition (Dkt. 30), and Defendant's Reply in Support of its Motion to Dismiss (Dkt. 33). Upon consideration of all relevant filings and case law, and being otherwise fully advised, the Court **GRANTS** Defendant's Motion to Dismiss, as described herein.

## I. BACKGROUND

On July 23, 2012, Plaintiff filed this action against Defendant in state court. (Dkt. 2) Defendant timely removed the action to this Court. (Dkt. 1) In the initial complaint, Plaintiff alleged that Defendant manufactures and sells the Charite Artificial Disc (the "Disc") nationwide. (Dkt. 2 at 3) Plaintiff had one of Defendant's Discs surgically implanted in his spine in 2005. (*Id.* at 4) On or about January 2009, the Disc in Plaintiff's spine failed. (*Id.* at 5) Plaintiff sued Defendant for negligence and strict liability alleging the Disc was defective because it was not in accordance with the premarket approval ("PMA") requirements approved by the Food and Drug Administration ("FDA").

On December 7, 2012, Defendant filed its first motion to dismiss Plaintiff's claims. (Dkt. 12) In that motion, Defendant argued Plaintiff's claims were preempted by federal law since the Disc is a medical device regulated by the FDA and sold under the PMA process. Defendant argued that Supreme Court and Eleventh Circuit precedent hold that claims such as Plaintiff's, which challenge a medical device approved by the FDA through the PMA process, are expressly preempted. On January 8, 2013, rather than filing a response to Defendant's motion, Plaintiff filed an unopposed motion requesting the entry of an order granting Defendant's motion to dismiss without prejudice. (Dkt. 15) The unopposed motion also stipulated that Plaintiff would be afforded leave to

file an amended complaint. The Court granted Plaintiff's unopposed motion.

On January 28, 2013, Plaintiff filed his amended complaint. (Dkt. 18) In the amended complaint, Plaintiff alleges that Defendant manufactures, sells, and distributes the Disc throughout the United States. (*Id.* at 3) Plaintiff had the Disc surgically implanted in his spine in 2005. (*Id.* at 4) In 2004, the FDA granted premarket approval for the Disc, including the one implanted in Plaintiff's spine. (*Id.* at 8) Plaintiff alleges that the PMA requires that the Disc be designed, tested, and manufactured with two cobalt endplates with a polyethelene sliding core that, when surgically implanted in a patient's spine, will provide natural motion in the lumbar spine. (*Id.* at 10) According to Plaintiff, Defendant failed to design, test, manufacture, market, sell, promote, label, and/or distribute the Disc implanted in Plaintiff's spine in accordance with the PMA requirements determined by the FDA. (*Id.* at 11)

Plaintiff alleges the Disc became unsafe and ineffective when it became damaged, displaced, and/or the polyethelene core deteriorated to the point that it was unable to slide and otherwise restore natural motion, which violates the PMA requirements. (*Id.* at 14) Plaintiff alleges that on or about January 2009, the Disc in Plaintiff's spine failed when the polyethelene core and the cobalt endplates malfunctioned resulting in a complete failure of the sliding polyethelene core and a loss of natural motion in Plaintiff's lumbar spine. (*Id.* at 5) Plaintiff sues Defendant for negligence and strict liability. Defendant again moves to dismiss citing preemption of a claim challenging a medical device regulated by the FDA.

## II. STANDARD

The threshold for surviving a motion to dismiss for failure to state a claim under FED. R. CIV. P. 12(b)(6) is a low one. *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A., et al.,* 711 F.2d 989, 995 (11th Cir.1983). A plaintiff must plead only sufficient facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 561–62, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating the "no set of facts" standard for evaluating a motion to dismiss established in *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Although a complaint challenged by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff is obligated to provide the "grounds" for his entitlement to relief. *Berry v. Budget Rent A Car Sys., Inc.,* 497 F.Supp.2d 1361, 1364 (S.D.Fla.2007) (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955). In evaluating the sufficiency of a complaint in light of a motion to dismiss, the well pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff. *Quality Foods,* 711 F.2d at 994–95. The Court's consideration must be limited to the pleadings and any exhibits attached thereto. *Ahern v. Fidelity Nat. Title Ins. Co.,* 664 F.Supp.2d 1224, 1226 (M.D.Fla.2009) (internal citations omitted) (citing *GSW, Inc. v. Long Cnty. Ga.,* 999 F.2d 1508, 1510 (11th Cir.1993)); *see also Quality Foods,* 711 F.2d at 994–95.

## III. DISCUSSION

Defendant argues Plaintiff's amended complaint fails to state a claim upon which relief can be granted because (1) the preemption provision of the Medical Device Amendments of 1976 ("MDA") expressly bars state law claims approved through the PMA process, (2) Plaintiff fails to allege a parallel claim premised upon a violation of FDA regulations or specific PMA requirements, and (3) even if Plaintiff suf-

ficiently alleged a parallel claim, the claim is barred because the Food, Drug and Cosmetic Act (the "FDCA"), 21 U.S.C. § 301 *et seq.*, does not provide a private right of action. Plaintiff responds that he has asserted parallel claims that are not subject to preemption.

The regulation of medical devices entering the market is governed by the FDCA. In 1976, Congress passed the MDA, which amended the FDCA. *See Stokes v. I–Flow Corp.*, 2013 WL 1715427, *2 (M.D.Fla. 2013). Until the statutory enactment of the MDA, the introduction of new medical devices was left largely for the states to supervise as they saw fit. *Stokes*, 2013 WL 1715427, at *3 (citing *Riegel v. Medtronic*, 552 U.S. 312, 315, 128 S.Ct. 999, 169 L.Ed.2d 892 (2008)). However, the MDA "swept back some state obligations and imposed a regime of detailed federal oversight" over medical devices entering the market. *Id.* (citing *Riegel*, 552 U.S. at 316, 128 S.Ct. 999). The MDA's express preemption provision provides that:

> [N]o State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. 360k(a).

■ Thus, the MDA "expressly preempts only state requirements different from, or in addition to, any requirement applicable . . . to the device under federal law." *See Wolicki–Gables v. Arrow Intern., Inc.*, 634 F.3d 1296, 1300 (11th Cir. 2011). In *Riegel*, the Supreme Court established a two-pronged test to determine whether a state law claim is preempted.

First, a court must determine whether the federal government has established requirements applicable to the medical device. If so, the court must then determine whether the state law claims are based upon requirements with respect to the device that are different from, or in addition to the federal ones, and that relate to safety and effectiveness. 552 U.S. at 321–322, 128 S.Ct. 999. It is undisputed in this case that since premarket approval imposes device-specific requirements under the MDA, medical devices approved through the premarket process, such as the Disc at issue here, automatically satisfy the first prong. *See id.* at 322–323, 128 S.Ct. 999; *Stokes*, 2013 WL 1715427, at *5 (citations omitted). Thus, the Court must determine whether Plaintiff's negligence and strict liability claims in this case seek to impose state law requirements that are in addition to or inconsistent with the federal requirements. *See Stokes*, at *5.

Since the MDA only expressly preempts state requirements that are different from, or in addition to, requirements applicable to the device under federal law, the MDA preemption clause does not apply to a parallel claim. *Reigel*, 552 U.S. at 330, 128 S.Ct. 999. In *Reigel*, the Court stated:

> State requirements are pre-empted under the MDA only to the extent they are "different from, or in addition to the requirements imposed by federal law." § 360k(a)(1). Thus, § 360k does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in such a case "parallel," rather than add to, federal requirements.

*Id.* (citing *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)). Because the claims in *Riegel* alleged that the device at issue violated state tort law despite compliance with federal requirements, the Court found the

claims involved requirements that were different from, or in addition to, federal requirements. *Id.* at 325. In *Wolicki–Gables*, the Eleventh Circuit, citing a Seventh Circuit case, explains the parallel claim principle as follows:

> In order for a state requirement to be parallel to a federal requirement, and thus not expressly preempted under § 360k(a), the plaintiff must show that the requirements are "genuinely equivalent." State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law.

634 F.3d at 1300 (citations omitted).

In order to allege a "parallel claim," the Eleventh Circuit made clear that "Plaintiffs cannot simply incant the magic words '[Defendant] violated FDA regulations' in order to avoid preemption." *Wolicki–Gables*, 634 F.3d at 1301. "Parallel claims must be specifically stated in the initial pleadings. A plaintiff must allege that the defendant violated a particular federal specification referring to the device at issue. To properly allege parallel claims, the complaint must set forth facts pointing to specific PMA requirements that have been violated." *Id.* (internal quotations and citations omitted).

The complaint in *Wolicki–Gables* contained Florida state law claims for strict liability and negligence concerning alleged design and manufacturing defects in a pump system for alleviating back pain, as well as a strict liability claim for failure to warn. *Id.* In that case, the plaintiff alleged that Defendants "failed to reasonably design the implantable drug delivery system in a manner which would have prevented injury to those like [Plaintiff]; failed to reasonably manufacture the implantable drug delivery system in a reasonable manner; and failed to reasonably provide adequate warnings regarding the defective and unreasonably dangerous implantable drug delivery system, having actual or constructive knowledge of the hazards associated with the product." *Id.* The district court determined that each claim was preempted by the MDA and dismissed the claims on summary judgment. The Eleventh Circuit agreed because plaintiff's allegations did not "set forth any specific problem, or failure to comply with any FDA regulation that can be linked to the injury alleged." *Id.* (citation omitted).

■ Here, Defendant argues Plaintiff fails to allege a parallel claim since Plaintiff, in his amended complaint, does not identify any particular federal specification or specific PMA requirement or FDA regulation that Defendant violated. Plaintiff contends that his allegation that "the Charite Artificial Disc implanted in Plaintiff's spine was not designed and manufactured in accordance with the PMA requirements determined by the FDA" (Dkt. 30, p. 6), constitutes a permissible parallel claim under federal law. This allegation is similar to the sort of general and conclusory allegations that the Eleventh Circuit, as well as Courts in this District, have found to be insufficient to state a parallel claim as it does not "set forth any specific problem, or failure to comply with any FDA regulation that can be linked" to Plaintiff's injury. *See Wolicki–Gables*, 634 F.3d at 1301; *Stokes*, 2013 WL 1715427, at *7 (plaintiff's allegations were insufficient since they failed to set forth any problem or failure to comply with a federal regulation that could be linked to the injury alleged); *Llado–Carreno v. Guidant Corp.*, 2011 WL 6223409, at *1 (S.D.Fla.2011) (general allegations that "the devices did not satisfy the [FDA's] Pre–Market Approval standards for the devices" are insufficient to satisfy the requisite elements of a parallel claim where Plaintiff fails to pro-

vide any factual detail to substantiate the allegations and does not set forth any specific problem, or failure to comply with any FDA regulation that can be linked to the injury alleged).

To the extent Plaintiff is arguing that his allegation that "the Disc became unsafe and ineffective when it became damaged, displaced, and/or the polyethelene core deteriorated to the point that it was unable to slide and otherwise restore natural motion, which violates the PMA requirements" is sufficient to state a parallel claim, this argument lacks merit. Again, this allegation does not show that the Disc at issue failed to comply with specific performance standards established by the FDA. Plaintiff does not allege that the FDA ever adopted formal performance standards and regulations requiring the Disc to "slide and otherwise restore natural motion." In fact, in its PMA memorandum, the FDA identified the specific performance standards that apply[1] to the Disc at issue, and it specifically recognized that the Disc conformed to all of these standards. None of those standards identified in the PMA memorandum were alleged to have been violated in Plaintiff's amended complaint.[2] Since Plaintiff has failed to plead a parallel claim, the Court

finds Plaintiff's claims are preempted by the MDA in this case.

■ The Court also finds Plaintiff's claims should be dismissed since Florida law does not allow Plaintiff to bring a private cause of action to enforce FDA regulations. In this case, Plaintiff's claims are based on allegations that the Disc at issue failed to meet requirements established by the FDA. In *Wolicki–Gables,* because the Eleventh Circuit found that Plaintiff's claims were preempted, the Court did not address the issue of whether Florida recognized private actions brought for violations of FDA regulations. 634 F.3d at 1302. However, district courts in this Circuit have consistently held that private actions like Plaintiff's that seek to enforce violations of FDA regulations are barred because Florida does not recognize such causes of action. *See Wheeler v. DePuy Spine, Inc.,* 706 F.Supp.2d 1264, 1268 (S.D.Fla.2010) (plaintiff's claims for negligence and products liability, arising from the same product at issue in this case, failed because plaintiff did not identify a Florida law that provides a remedy based on an alleged violation of FDA regulations); *Cook v. MillerCoors, LLC,* 872 F.Supp.2d 1346, 1351 (M.D.Fla.2012) (plaintiff cannot rely on allegations regarding FDA violations because no private

---

**1.** The performance standards listed in the PMA memorandum and to which the Disc is said to conform are: (1) ISO 5832–4:1996—Implants for Surgery. Metallic materials. Part 4: cobalt-chromium-molybdenum casting alloy; (2) ASTM F75:1998—Standard Specification for Cobalt–28 Chromium–6 Molybdenum Alloy Castings and Casting Alloy for Surgical Implants (UNS R30075); (3) ISO 5834–2:1998—Implants for Surgery—Ultra–High–Molecular–Weight Polyethylene—Part 2: Moulded Forms–Second Edition; (4) ASTM F648:98—Standard Specification for Ultra–high–Molecular–Wight Polyethylene Powder and Fabricated Form for Surgical Implants; (5) ISO 5832–7:1994(E)—Implants for Surgery—Metallic materials—Part 7:

Forgeable and Cold–Formed Cobalt Chromium–Nickel Molybdenum–Iron Alloy Second Edition. (Dkt. 22–2, p. 5).

**2.** In deciding the instant motion to dismiss, the Court may take judicial notice of public records of the FDA relating to the medical device involved in this case. *See Rounds v. Genzyme Corp.,* 2010 WL 5297180, at *1 (M.D.Fla.2010) (since a matter in the public record is susceptible to judicial notice and consideration in resolving a motion to dismiss, "the FDA's public records and statements about [a medical device] merit judicial notice"); *McClelland v. Medtronic, Inc.,* 2012 WL 5077401, at *2 (M.D.Fla.2012).

right of action exists under the Food, Drug and Cosmetic Act); *Wolicki–Gables v. Arrow Intern., Inc.,* 641 F.Supp.2d 1270, 1292, *aff'd on other grounds* by *Wolicki–Gables,* 634 F.3d at 1302 ("The Court recognizes that the FDCA and its regulations prohibit off-label promotion by manufacturers, but, even if such a claim were present in this case, there is no private right of action for violations of the FDCA"); *Stokes,* 2013 WL 1715427, at *4 ("to the extent Plaintiff bases his strict product liability, negligence, or failure to warn claims on Defendant's alleged violations of the FDCA or FDA's implementing regulations, those claims are dismissed for failure to state a claim [because] the Court cannot hear any claims by private litigants to enforce the regulations of the FDA.")

■ Finally, Plaintiff argues that should the Court decide to dismiss Plaintiff's complaint, the Court should dismiss the complaint without prejudice to permit plaintiff to assert a breach of express warranty claim. Defendant contends leave to file another amended complaint is unwarranted as any amendment to assert the breach of warranty claim would be futile. The Court agrees with Defendant's argument. It is well established law in Florida that warranty-based claims, including breach of express warranty, require privity of contract between the parties. *See Timmons v. Purdue Pharma Co.,* 2006 WL 263602, at *5 (M.D.Fla.2006) (citations omitted) ("The law of Florida is that to recover for breach of warranty, either express or implied, the plaintiff must be in privity of contract with the defendant.") No privity exists, and a breach of warranty claim fails, where plaintiff did not purchase the product from the defendant. *Cooper v. Old Williamsburg Candle Corp.,* 653 F.Supp.2d 1220, 1226 (M.D.Fla.2009). Because medical devices, such as the Disc at issue here, are available to Plaintiff only

through prescription use from a licensed physician or healthcare provider, see (Dkt. 22–1), Plaintiff could not assert an allegation that he purchased such device directly from the manufacturer, the Defendant in this case. In fact, Plaintiff has already alleged that the device was surgically implanted in Plaintiff's spine, presumably by a physician or healthcare provider. Further, the document Plaintiff seeks to rely on for the breach of warranty claim expressly states: "CAUTION: Federal (USA) Law restricts this device to sale by or on the order of a physician (or properly licensed practitioner) who has appropriate training or experience." (Dkt. 30, p. 19) Therefore, any attempt to assert a claim for breach of express warranty in this case would be futile.

Accordingly, based on the foregoing, it is hereby **ORDERED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint is **GRANTED;**

2. Plaintiffs' Claims are **DISMISSED with prejudice;**

3. The Clerk is **DIRECTED** to **CLOSE** this Case.